**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 25 WAP 2018 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court entered October 31, 2017 at |
| | : | No. 1225 WDA 2016, reversing the |
| v. | : | Judgment of Sentence of the Court of |
| | : | Common Pleas of Butler County |
| | : | dated August 4, 2016 at No. CP-10- |
| JOSEPH DEAN BUTLER, | : | CR-0001538-2014 and remanding. |
| | : | |
| Appellee | : | ARGUED:  October 16, 2019 |


**OPINION**


**JUSTICE DOUGHERTY**                                **DECIDED: MARCH 26, 2020**

We granted discretionary review to determine whether the procedure used to

designate certain individuals convicted of sexual offenses as sexually violent predators

(SVPs),[1] codified at 42 Pa.C.S. §9799.24(e)(3),[2] is constitutionally permissible in light of

---

[1] The General Assembly has defined sexually violent predators as those who have "a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses."  42 Pa.C.S. §9799.12.

[2] Section 9799.24(e) provides:

**(e) Hearing.--**

(1) A hearing to determine whether the individual is a sexually violent predator shall be scheduled upon the praecipe filed by the district attorney.  The district attorney upon filing a praecipe shall serve a copy of the praecipe upon defense counsel together with a copy of the report of the board.

our recent decision in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017) (registration requirements under Pennsylvania's Sex Offender Registration and Notification Act (SORNA) constitute criminal punishment and retroactive application is *ex post facto* violation). The Superior Court extrapolated from our decision in *Muniz* to hold the lifetime registration, notification, and counseling requirements (RNC requirements) applicable to SVPs pursuant to 42 Pa.C.S. §§9799.15, 9799.16, 9799.26, 9799.27, and 9799.36 are increased criminal punishment such that the procedure for conducting SVP determinations violates the requirements of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Alleyne v. United States*, 570 U.S. 99 (2013).[3] For the following reasons, we reverse and hold the RNC requirements do not constitute criminal punishment and therefore the procedure for designating individuals as SVPs under Section 9799.24(e)(3) is not subject to the requirements of *Apprendi* and *Alleyne* and remains constitutionally permissible.

> (2) The individual and district attorney shall be given notice of the hearing and an opportunity to be heard, the right to call witnesses, the right to call expert witnesses and the right to cross-examine witnesses. In addition, the individual shall have the right to counsel and to have an attorney appointed to represent the individual if the individual cannot afford one. If the individual requests another expert assessment, the individual shall provide a copy of the expert assessment to the district attorney prior to the hearing.
>
> (3) At the hearing prior to sentencing, the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator.
>
> (4) A copy of the order containing the determination of the court shall be immediately submitted to the individual, the district attorney, the Pennsylvania Board of Probation and Parole, the Department of Corrections, the board and the Pennsylvania State Police.

42 Pa.C.S. §9799.24(e).

[3] In *Apprendi* and *Alleyne*, the Supreme Court of the United States held any fact, which increases the statutory maximum penalty (*Apprendi*), or mandatory minimum sentence (*Alleyne*), must be submitted to a jury and proven beyond a reasonable doubt.

# I. Background

On July 27, 2015, appellee Joseph Dean Butler pled guilty to statutory sexual assault and corruption of minors[4] after engaging in sexual intercourse with a 15-year-old female victim on approximately 50 occasions between October 1, 2013 and June 6, 2014. N.T. 7/27/2015 at 2. Due to his conviction for corruption of minors, SORNA required appellee to undergo an assessment by the Sexual Offender Assessment Board (SOAB) to evaluate whether he should be designated as an SVP and the court deferred sentencing until the assessment was completed. *Id.* at 12-13. Following the procedures outlined in Section 9799.24(e), the trial court conducted a hearing, found the Commonwealth provided clear and convincing evidence that appellee was an SVP, and ordered appellee be designated as such. N.T. 5/25/16 at 10-11. The court later sentenced appellee to 12 to 30 months' incarceration followed by 90 months' probation. N.T. 8/4/16 at 8-9. The court subsequently denied appellee's post-sentence motions and he appealed to the Superior Court.

In a divided, published opinion, a three-judge panel of the Superior Court considered, *sua sponte*, whether the procedure for making SVP determinations under Section 9799.24(e)(3) violated *Apprendi* and *Alleyne*. *Commonwealth v. Butler*, 173 A.3d 1212 (Pa. Super. 2017).[5] The panel determined *sua sponte* review was necessary due to its interpretation of *Muniz* as indicating appellee's SVP determination exposed him to an increased minimum registration requirement, and thus implicated the legality of his sentence.[6] *Id.* at 1214, *citing Commonwealth v. Barnes*, 151 A.3d 121, 127 (Pa. 2016)

---

[4] 18 Pa.C.S. §3122.1 and 18 Pa.C.S §6301(a)(1)(ii), respectively.

[5] Judge Judith Ference Olson authored the opinion, which was joined by President Judge Emeritus John T. Bender; Judge Victor P. Stabile noted his dissent.

[6] Based on his conviction for corruption of minors, a tier one offense under SORNA, *see* 42 Pa.C.S. §9799.14(b)(8), appellee would have been subject to a registration term of 15

("where the mandatory minimum sentencing authority on which the sentencing court relied is rendered [unconstitutional], and no separate mandatory authority supported the sentence, any sentence entered under such purported authority is an illegal sentence for issue preservation purposes on direct appeal"). The panel majority concluded *Muniz* was dispositive — without conducting any analysis regarding either the differences between the RNC requirements and the requirements at issue in *Muniz* or the differences between SVPs and other sex offenders. In doing so, the majority stated:

> [S]ince our Supreme Court has held that SORNA registration requirements are punitive or a criminal penalty to which individuals are exposed, then under *Apprendi* and *Alleyne*, a factual finding, such as whether a defendant has a "mental abnormality or personality disorder that makes [him or her] likely to engage in predatory sexually violent offenses[,]" 42 Pa.C.S.A. § 9799.12, that increases the length of registration must be found beyond a reasonable doubt by the chosen fact-finder. Section 9799.24(e)(3) identifies the trial court as the finder of fact in all instances and specifies clear and convincing evidence as the burden of proof required to designate a convicted defendant as an SVP. Such a statutory scheme in the criminal context cannot withstand constitutional scrutiny. Accordingly, we are constrained to hold that [S]ection 9799.24(e)(3) is unconstitutional and Appellant's judgment of sentence, to the extent it required him to register as an SVP for life, was illegal.

*Id.* at 1217-18.

The Commonwealth filed a petition for allowance of appeal in this Court and we granted review of the following question: "Whether the Superior Court of Pennsylvania erred in vacating the trial court's [o]rder finding [appellee] to be [an SVP] by extrapolating the decision in [*Muniz*] to declare SVP hearings and designations unconstitutional under [Section] 9799.24(e)(3)?" *Commonwealth v. Butler*, 190 A.3d 581 (Pa. 2019) (*per curiam*).

---

years. *See* 42 Pa.C.S §9799.15(a)(1). However, the trial court's SVP designation subjected appellee to lifetime registration. *See id.* at (a)(6).

Briefly, the parties dispute whether the *Muniz* Court's holding regarding criminal punishment automatically applies to all individuals falling under the purview of SORNA, including SVPs, or whether a separate analysis of the RNC requirements must be conducted with a specific focus on SVPs. The parties also dispute whether the judicial fact-finding required under Section 9799.24(e)(3) remains constitutionally permissible under *Oregon v. Ice*, 555 U.S. 160 (2009),[7] even if we find the RNC requirements constitute criminal punishment. As we consider the arguments of the parties in greater detail below, "we recognize there is a general presumption that all lawfully enacted statutes are constitutional. In addition, as this case presents questions of law, our scope of review is plenary and we review the lower courts' legal determinations *de novo*." *Muniz*, 164 A.3d at 1195 (internal citation omitted).

## II. *Muniz* and *Commonwealth v. Williams*, 832 A.2d 962 (Pa. 2003) (*Williams II*)

We first summarize the reasoning in *Williams II* and *Muniz* as the analyses employed in those cases will frame our discussion of whether the RNC requirements constitute punishment. Since we thoroughly summarized *Williams II* in *Muniz*, we reproduce that summation here:

> In *Williams II*, this Court considered whether the [RNC] requirements of Megan's Law II,[8] applicable to [SVPs], constituted criminal punishment such that their imposition on the defendants violated their rights to due process under the United States and Pennsylvania Constitutions. *Williams II*, 832 A.2d at 964. This Court analyzed the statute's provisions under the same two-level inquiry used by the U.S. Supreme Court in *Smith* [*v. Doe*, 538 U.S. 84 (2003)]. *Id.* at 971. As to the first question, whether the General Assembly's intent was to punish, the *Williams II* Court

---

[7] In *Ice*, the United States Supreme Court held the *Apprendi* rule applies only to facts traditionally decided by juries under the common law at the time of the passage of the Bill of Rights. 555 U.S. at 172.

[8] Megan's Law II was a predecessor statute to SORNA. A complete history of Pennsylvania sex offender laws and related case law was included in our decision in *Muniz*. 164 A.3d at 1196-1208.

determined the statute's statement of purpose was clear in that its intent was to identify potential recidivists and avoid recidivism by providing awareness of particular risks to members of the public[,] and providing treatment to offenders. *Id.* at 971–72. The Court stated the statute's purpose was therefore "not to punish, but to promote public safety through a civil, regulatory scheme." *Id.* at 972.

The *Williams II* Court then examined the [*Kennedy v. Mendoza–Martinez*, 372 U.S. 144 (1963)[9]] factors to determine whether the sanctions are "so punitive as to transform what was clearly intended as a civil remedy into a criminal penalty." *Id.*, *quoting* [*United States v.* ]*Ward*, 448 U.S. [242, 249 (1980)]. The Court first found the registration requirements of Megan's Law II did not directly impose a deprivation or restraint upon [SVPs] as they "remain free to live where they choose, come and go as they please, and seek whatever employment they may desire." *Id.* at 973, *quoting Femedeer v. Haun*, 227 F.3d 1244, 1250 (10th Cir. 2000). Thus, the Court held it could not find the clearest proof the requirements were "so onerous as to constitute an affirmative disability or restraint." *Williams*[ *II*], 832 A.2d at 975. The Court further found it was not clear the notification requirements of Megan's Law II were analogous to public shaming, or other historical forms of punishment, as "the disclosure of factual information concerning the local presence of a potentially harmful individual is aimed, not at stigmatizing that individual, but allowing potentially vulnerable members of the public to avoid being victimized." *Id.* at 976.

The Court then found applicability of Megan's Law II does not depend only upon a finding of scienter[10] since some predicate offenses can be committed whether or not the defendant is aware his conduct is criminal, *e.g.*, the statute applies to the crime of sexual abuse of children,

---

[9] In *Mendoza-Martinez*, the Supreme Court of the United States listed the following seven factors as a framework for determining whether a statute is so punitive as to negate a legislature's intention to identify the scheme as civil or regulatory: "[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned[.]" *Mendoza-Martinez*, 372 U.S. at 168-69 (footnotes omitted).

[10] Scienter is defined as "[a] degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission[.]" *Scienter*, Black's Law Dictionary (11th ed. 2019).

where the defendant may be convicted despite the good faith belief the child was over eighteen years of age. *Id.* at 977–78. The *Williams II* Court further found since there was a substantial period of incarceration attached to the predicate offenses of rape and involuntary deviate sexual intercourse, the prospects of registration and notification would have little deterrent effect upon [an SVP]. *Id.* at 978. The Court also found the measures were not retributive as they do not "require [an SVP to] 'pay his debt to society,' through the impositions of fines, restitution, or confinement." *Id.*, *quoting Williams v. Illinois*, 399 U.S. 235, 261 [ ] (1970) (Harlan, J., concurring).

The *Williams II* Court found the crucial determination of [SVP] status under Megan's Law II was not based upon the particular criminal conduct or crime at issue, but instead upon a separate finding of mental abnormality or personality disorder. *Williams II*, 832 A.2d at 978. The Court recognized, however, that whether the behavior to which Megan's Law II applies is already a crime is of little significance in evaluating whether or not the statute is punitive because "application to past criminal conduct is 'a necessary beginning point [where] recidivism is the statutory concern.'" *Id.* at 979, *citing Smith*, 538 U.S. at 105[.]

Additionally the Court found the sixth *Mendoza–Martinez* factor, whether the act has a rational connection to a nonpunitive purpose, "is a '[m]ost significant' factor in our determination that the statute's effects are not punitive." *Id.* at 979, *quoting Smith*, 538 U.S. at 102[.] The Court noted there are "grave concerns over the high risk of recidivism among convicted sex offenders," *id.* at 979, *quoting Smith*, 538 U.S. at 103[,] and it was significant that most of the notification provisions in Megan's Law II pertained to neighbors of [SVPs], social service agencies, schools, and day care centers. *Id.* The Court found concerns about information being placed on the internet to be unwarranted because Megan's Law II information was available to the public only upon request. *Id.* at 980. The Court distinguished Megan's Law II from New Jersey's sex offender statute which specifically authorized online dissemination of offender information. *Id.*, citing N.J. STAT. ANN. §§ 2C:7–12–2C:7–14. The Court concluded the "dissemination of [SVP] information to individual members of the public, upon request, appear[ed] to be a reasonable means chosen by the Legislature to serve the legitimate government interest in providing persons who may be affected by the presence of [an SVP] with the information they need to protect themselves[.]" *Id.* at 981.

Finally, the Court determined Megan's Law II's [RNC] requirements were not sufficiently onerous to be considered punishment based upon alleged excessiveness. *Id.* at 982. Although the Court conceded it was "troubling"

that the requirements last for the entire lifetime of the [SVP], and the legislature could avoid excessiveness claims by allowing [an SVP] to invoke judicial review to demonstrate he no longer poses a substantial risk, the Court recognized the record did not include any information concerning the successful treatment of [SVPs]. *Id*. at 982–83. Accordingly, the *Williams II* Court established the [RNC] requirements imposed on [SVPs] under Megan's Law II were not punitive; thus their imposition did not violate the offenders' due process rights. *Id*. at 984.

*Muniz*, 164 A.3d at 1201-03 (internal footnotes omitted).

In *Muniz*, we considered whether the registration requirements of SORNA constituted criminal punishment such that their retroactive application violated the *ex post facto* clauses of the United States and Pennsylvania Constitutions. *Id*. at 1192. To that end, we employed the same two-level inquiry utilized in *Williams II* and first determined "the General Assembly's intent in enacting SORNA apparently was twofold: to comply with federal law; and . . . 'not to punish, but to promote public safety through a civil, regulatory scheme.'" *Id*. at 1209-10, *quoting Williams II*, 832 A.2d at 972.

Moreover, in *Muniz*, we considered the *Mendoza-Martinez* factors and found SORNA imposed an affirmative disability or restraint upon offenders due to the onerous in-person reporting requirements for both verification and changes to an offender's registration. *Id*. at 1211. We thus distinguished the holding in *Williams II* that the counseling requirements for SVPs were not an affirmative disability or restraint because such requirements were meant to assist SVPs and were based on a separate finding that SVPs are in need of such counseling. *Id*. We also determined in *Muniz* that SORNA's requirements were analogous to historical forms of punishment, specifically holding the statute's "publication provisions — when viewed in the context of our current internet-based world — to be comparable to shaming punishments" and the mandatory conditions placed on registrants to be akin to probation. *Id*. at 1213.

The Muniz Court next determined the fact SORNA comes into play only upon a finding of scienter was of little significance to our inquiry because "past criminal conduct

is 'a necessary beginning point'" for statutes that are intended to protect the public. *Id.* at 1214, *quoting Smith*, 538 U.S. at 105. We further held in *Muniz* that SORNA promotes the traditional aims of punishment as "the prospect of being labeled a sex offender accompanied by registration requirements and the public dissemination of an offender's personal information over the internet has a deterrent effect." *Id.* at 1215. In so holding, we distinguished *Williams II*, stating there was a clear deterrent effect since, "[c]ontrary to Megan's Law II, as analyzed in *Williams II*, there is not a 'substantial period of incarceration attached to' many of the predicate offenses requiring registration under SORNA, many of which are misdemeanors or carry relatively short maximum terms of incarceration." *Id.*, *quoting Williams II*, 832 A.2d at 978 (internal footnotes omitted). *Muniz* also stated the General Assembly increased the retributive effect of SORNA as compared to Megan's Law II by "increas[ing] the length of registration, [adding] mandatory in-person reporting requirements, and allow[ing] for more private information to be displayed online." *Id.* at 1216 (citation omitted). We also determined in *Muniz* that whether or not the behavior to which SORNA applies is already a crime carries little weight, stating "where SORNA is aimed at protecting the public against recidivism, past criminal conduct is 'a necessary beginning point.'" *Id.*, *quoting Smith*, 538 U.S. at 105.

Although recognizing "there are studies which find the majority of sexual offenders will not re-offend, and that sex offender registration laws are ineffective in preventing re-offense[,]" we deferred in *Muniz* to the General Assembly's policy determination and concluded the protection of the public from sex offenders "is a purpose other than punishment to which the statute may be rationally connected and this factor weighs in favor of finding SORNA to be nonpunitive." *Id.* at 1217. Lastly, we determined SORNA's registration requirements were excessive and over-inclusive in relation to the statute's intended purpose of protecting the public; it "categorize[d] a broad range of individuals as

sex offenders subject to its provisions, including those convicted of offenses that do not specifically relate to a sexual act." *Id.* at 1218. Accordingly, we held in *Muniz* that SORNA's registration requirements constituted punishment and their retroactive application constituted a violation of the constitutional prohibition against *ex post facto* laws. *Id.*

## III. RNC Requirements

Also framing our analysis of the present appeal is the statutory scheme applicable to SVPs. Under SORNA, those designated as SVPs are obligated to comply with the RNC requirements for life.[11] 42 Pa.C.S §9799.15(a)(6). Registration requires SVPs to appear in person every three months to be photographed and to verify compliance with their obligations, as well as an in-person appearance to report any changes to their registration information within three days of the change. 42 Pa.C.S. §9799.15(f)-(g). SVPs must submit to the registry their names, residential addresses, IP addresses, phone numbers, social security numbers, employer information, professional licensing information, vehicle information, and birthdates. 42 Pa.C.S. §9799.16(b). Failure to comply with the registration requirements is a criminal offense, which is graded as a first or second-degree felony. 18 Pa.C.S. §4915.1(c).

---

[11] Following our decision in *Muniz* and the Superior Court's decision in the present case, the General Assembly passed Act 10 of 2018, which divided SORNA into two subchapters. Subchapter H is based on the original SORNA statute and is applicable to offenders, like appellee, who committed their offenses after the December 20, 2012 effective date of SORNA; Subchapter I is applicable to offenders who committed their offenses prior to the effective date of SORNA and to whom the *Muniz* decision directly applied. The only relevant change with regard to SVPs under Subchapter H is the addition of a provision allowing SVPs, and other lifetime registrants, to petition for removal from the registry after 25 years. *See* 42 Pa.C.S. §9799.15(a.2). The General Assembly later passed Act 29 of 2018, which replaced Act 10 but made no relevant changes to Subchapter H regarding the statutory scheme applicable to SVPs. Appellee is now subject to the Act 29 version of Subchapter H due to his SVP designation, and as a result we consider the removal provision in our analysis. For clarity, we use "Subchapter H" when referring to portions of the statute other than the RNC requirements.

Following an SVP's initial registration, the local police must notify the SVP's victim regarding the SVP's name, residence, address of employment, and any address at which the SVP is enrolled as a student. 42 Pa.C.S. §9799.26(a)(1). Local police must also notify neighbors, the local county's children and youth agency director, local school superintendents, local day-care centers and preschool programs, and local colleges and universities regarding the SVP. 42 Pa.C.S. §9799.27(b). Such notice must provide the SVP's name, address, offense for which the SVP was convicted, a statement that the individual has been determined to be an SVP, and a photograph of the SVP. 42 Pa.C.S. §9799.27(a).

SVPs are also required to attend monthly counseling sessions in a program approved by the SOAB and are financially responsible for the fees associated with such counseling unless the SVP can prove he or she is unable to make such payments. 42 Pa.C.S. §9799.36(a). SVPs must verify their compliance with the counseling requirements during their quarterly in-person verification, 42 Pa.C.S. §9799.15(f)(3), and failure to comply with the counseling requirement is a criminal offense, which is graded as a first-degree misdemeanor, 18 Pa.C.S. §4915.1(c.3).

## IV. Arguments

The Commonwealth argues the lower court erred in extrapolating from *Muniz* to declare SVP designations unconstitutional pursuant to *Apprendi* and *Alleyne* because "statutes pertaining to [SVPs] are subject to their own independent body of case law, and the guidance from these cases instructs that the government is empowered to address the heightened danger posed by SVPs through measures beyond those imposed on non-SVPs without the resulting approach constituting criminal punishment." Commonwealth's Brief at 28. In doing so, the Commonwealth relies on *Kansas v. Hendricks*, 521 U.S. 346 (1997), in which the Supreme Court of the United States held a Kansas statute permitting

the indefinite civil commitment of SVPs did not constitute criminal punishment because the statute required both proof of future dangerousness and a mental abnormality. *Id.* at 29-30. The Commonwealth contends although the RNC requirements exceed the requirements placed upon the non-SVPs at issue in *Muniz*, "they are more than justified and in stark contrast to the confinement system in *Hendricks*." *Id.* at 32. The Commonwealth further argues *Hendricks*, as well as *Muniz* and *Williams II*, support the principle that "SVPs are different" due to the "heightened public safety concerns" they present, such that the more-onerous RNC requirements do not constitute punishment. *Id.* at 33.

As such, the Commonwealth contends *Muniz* does not control here and we must proceed to an independent analysis of whether the RNC requirements constitute criminal punishment. *Id.* To that end, the Commonwealth argues the General Assembly intended Subchapter H to be a civil regulatory scheme, as opposed to a criminal punitive scheme. *Id.* at 34, *citing* 42 Pa.C.S. §9799.11(b)(2) (Subchapter H "shall not be construed as punitive"). Accordingly, the Commonwealth insists we may find the RNC requirements unconstitutional only if the statute is "so punitive in effect that it overcomes the legislature's stated purpose." *Id.* at 35.

In order to demonstrate the RNC requirements are not punitive, the Commonwealth analyzes them using the *Mendoza-Martinez* factors. With regard to the first factor, the Commonwealth contends the RNC requirements do not impose an affirmative disability or restraint though the monthly counseling requirements are more demanding than the requirements at issue in *Muniz* because, as this Court stated in both *Williams II* and *Muniz*, the counseling requirement is designed to assist SVPs from relapsing into sexually predatory behavior. *Id.* at 38, *citing Muniz*, 164 A.3d at 1211-12 and *Williams II*, 832 A.2d at 975. The Commonwealth argues *Muniz* specifically

recognized this distinction and, accordingly, did not disturb the *Williams II* Court's finding that "SVPs are 'free to live where they choose, come and go as they please, and seek whatever employment they may desire.'" *Id.*, *quoting Williams II*, 832 A.2d at 973 (internal quotations omitted). This distinction in *Muniz*, the Commonwealth claims, "reflects that SVPs are subject to a distinct statutory scheme[.]" *Id*. at 39. Additionally, the Commonwealth argues the RNC requirements are much less restrictive than the civil commitments used in other states, *see Hendricks*, *supra*, and the absence of treatment, which was a concern of the *Hendricks* Court, is not an issue here because of the monthly counseling requirement. *Id*. at 40.

The Commonwealth also argues the RNC requirements are not comparable to historical forms of punishment, such as probation and public shaming. With regard to probation, the Commonwealth contends that unlike the requirements for non-SVPs, the RNC requirements are independent from the underlying conviction and instead "seek to address SVPs' compulsion to commit sexually violent offenses[.]" *Id*. at 41. In support of this argument, the Commonwealth again references the far more restrictive civil commitment requirements used in other jurisdictions, which the High Court held do not constitute punishment. *Id.*, *citing Hendricks*, *supra* and *Seling v. Young*, 531 U.S. 250 (2001) (Washington state civil commitment requirement for SVPs does not constitute punishment). The Commonwealth also refers to the declaration in *Williams II* that "counseling provisions applicable to SVPs [are not] historically analogous to punishment because 'counseling does not serve punitive ends notwithstanding its use as a condition of probation or parole.'" *Id*. at 42, *quoting Williams II*, 832 A.2d at 977. Additionally, the Commonwealth notes that the RNC requirements are unlike probation because the purpose of protecting the public is not effectuated "by monitoring SVPs in some fashion comparable to probation, but by making information available to the public who, at their

own initiative, may act to protect themselves from the potential risks posed by the SVP." *Id.* at 45. The Commonwealth further argues, with respect to public shaming, *Muniz* was flawed because the essential features of shaming are absent from the online registry; the registry is intended to inform the public, does not provide a mechanism for users to shame registrants, and requires the public to affirmatively seek out the information. *Id.* at 51-52. The Commonwealth further requests, should we be inclined to follow this aspect of the *Muniz* holding, that we "should afford nominal weight to this consideration in determining whether the RNC requirements" constitute punishment. *Id.*

The Commonwealth recognizes *Muniz* placed little significance on whether the non-SVP requirements were triggered by a finding of scienter because statutes seeking to protect the public against recidivism must necessarily be based upon a criminal conviction. *Id.* at 57. However, the Commonwealth contends the RNC requirements are different since they are imposed based upon a mental abnormality or personality disorder rather than criminal intent. *Id.*, *citing Williams II*, 832 A.2d at 978 (internal citations and quotations omitted). Accordingly, the Commonwealth argues this factor weighs in favor of ruling the RNC requirements are nonpunitive.

The Commonwealth further argues the difference between SVPs and non-SVPs should compel this Court to conclude the RNC requirements do not promote retribution and deterrence. With regard to deterrence, the Commonwealth contends SVPs are unlikely to be deterred due to their mental abnormality or personality disorder. *Id.* at 58, *citing Williams II*, 832 A.2d at 978 (internal citation omitted). The Commonwealth claims the RNC requirements seek to prevent recidivism, not through deterrent threats of punishment, but through counseling and notification to the public. *Id.* at 59. Relatedly, the Commonwealth contends the concerns of the *Muniz* Court regarding less serious offenses do not apply here since offenders are designated as SVPs following a thorough

assessment, which is not linked to the underlying offense. *Id.* at 61. As for retribution, the Commonwealth argues we should hold "any retributive effect associated with the SVP scheme 'is ancillary to the results achieved in terms of societal awareness and self-protection, and rehabilitation of the offender.'" *Id.* at 61-62, *quoting Williams II*, 832 A.2d at 978.

The Commonwealth claims, unlike in *Muniz*, whether the behavior to which the statute applies is already a crime is a significant factor when applied to SVPs. *Id.* at 62. The Commonwealth contends this factor "illustrates how an SVP designation results from a determination that they possess a certain mental condition or behavior disorder, not from the mere fact of conviction." *Id.* In support thereof, the Commonwealth again relies on *Williams II*, which stated SVP status does "'not appl[y] to conduct at all, but to an individual's status as suffering from a serious psychological defect.'" *Id.*, *quoting Williams II*, 832 A.2d at 978. Because "the RNC requirements for SVPs serve to address the SVP's condition or disorder apart from the severity or circumstances of their underlying offense[,]" the Commonwealth argues the *Muniz* analysis does not apply and this factor supports a finding the RNC requirements do not constitute punishment. *Id.* at 63.

The Commonwealth further posits we should find the RNC requirements are rationally connected to their nonpunitive purpose — the protection of the public — just as we did regarding the requirements at issue in *Muniz* and *Williams II*. *Id.* at 63-64, *citing Muniz*, 164 A.3d at 1216-17 (internal citations omitted) and *Williams II*, 832 A.2d at 979 (internal citations omitted). The Commonwealth observes this is a "'most significant factor in our determination that the statute's effects are not punitive.'" *Id.* at 64, *quoting Williams II*, 832 A.2d 979 (internal citations and quotations omitted). The Commonwealth additionally asserts the RNC requirements are "proportional to the General Assembly's nonpunitive purpose in creating [the] SVP scheme." *Id.* at 64. In support of this argument,

the Commonwealth claims we should consider the RNC requirements in light of the involuntary commitment statute, which was found not to constitute punishment in *Hendricks*, and conclude the SVP scheme is "neatly tailored to address the Legislature's intent while allowing SVPs to otherwise live a free and unrestricted life." *Id*. at 65. The Commonwealth asserts the discussion in *Muniz* regarding this factor does not apply here because *Muniz* was concerned with the over-inclusive nature of the entire SORNA statute, which encompassed a broad range of crimes, rather than focusing on the SVP scheme only. *Id*., *quoting Muniz*, 164 A.3d at 1218 ("we do not analyze excessiveness as applied only to [Muniz] or [SVPs], but instead we examine SORNA's entire statutory scheme"). As such, the Commonwealth argues we should follow the reasoning of *Williams II* to hold the RNC requirements "'appear reasonably designed to serve the government's legitimate goal of enhancing public awareness and ensuring that offenders do not relapse into harmful behavior.'" *Id*. at 66, *quoting Williams II*, 832 A.2d at 981. The Commonwealth insists the RNC requirements at issue here are less excessive than those in *Williams II; Williams II* involved lifetime registration without future judicial review, *id*. at 67-68, *citing Williams II*, 832 A.2d at 982, while SVPs are now afforded a mechanism for future relief from the RNC obligations. *Id*. at 68, *citing* 42 Pa.C.S. §9799.15(a.2). Based on the above, the Commonwealth contends the application of the *Mendoza-Martinez* factors proves the RNC requirements do not constitute criminal punishment. *Id*. at 69.

Alternatively, the Commonwealth argues, even if the RNC requirements are punitive, the judicial fact-finding required under Section 9799.24(e)(3) remains constitutionally permissible under *Oregon v. Ice*, which held the *Apprendi* rule applies only to facts traditionally decided by juries under the common law at the time of the passage of the Bill of Rights. *Id*. at 70. To that end, the Commonwealth cites to *People v. Mosley*, 344 P.3d 788 (Ca. 2015), which relied on *Ice* to hold the assessment and designation of

SVPs is a recent phenomenon unrelated to any common law jury tradition and thus *Apprendi* and *Alleyne* are inapposite. *Id.* at 75. The Commonwealth contends this is no different in Pennsylvania where the SVP system is a legislative creation disassociated from the common law. *Id.* at 76-77. The Commonwealth further argues the types of facts at issue during an SVP hearing, such as an offender's character, mental and emotional condition, history of sexual misconduct, and aggravating circumstances of such misconduct are not the type of facts traditionally within the purview of the jury. *Id.* at 79. Accordingly, the Commonwealth argues *Apprendi* and *Alleyne* are inapplicable to the SVP determination scheme at issue.[12]

In response, appellee argues the Superior Court's decision below was proper in light of *Muniz* and aligns with *Williams II*, which stated the SVP determination process could not "'surmount *Apprendi* if such finding results in further criminal punishment.'" Appellee's Brief at 19-20, *quoting Williams II*, 832 A.2d at 968-69. Appellee contends the entirety of Subchapter H, including the SVP scheme, remains punishment under *Muniz* and we should not accept the argument of the Commonwealth, which "makes every effort in its constitutional rebalancing to make the entirety of [Subchapter H] non-punitive." *Id.* at 25. Appellee also claims that *Hendricks* and *Seling* are inapposite because the statutes at issue in those cases required a jury determination that an offender was an SVP beyond a reasonable doubt, unlike Subchapter H. *Id.* at 26-28. Appellee further argues that the changes to Subchapter H in Act 10 and Act 29, including the relief mechanism codified at

---

[12] The Pennsylvania Coalition Against Rape and The Pennsylvania Office of Victim Advocate filed *amici curiae* briefs on behalf of the Commonwealth, which focus on public policy arguments regarding the impact a decision in favor of appellee would have on victims of sexual crimes. Crimewatch Technologies, Inc. also filed an *amicus curiae* brief on behalf of the Commonwealth, which focuses on the interactive nature of the online registry, which requires a user entering the website to accept terms of use before accessing registry information rather than retrieving the information through search engines.

Section 9799.15(a.2), did not render Subchapter H nonpunitive as the statute continues to require strict compliance and its enforcement provisions remain in the crimes code. *Id.* at 30-36.

Appellee recognizes the General Assembly purportedly intended Subchapter H to be nonpunitive, but appellee claims it did so because "that's the only way the statutory structure for SVPs has a chance to remain constitutional[,]" and this Court must therefore look at the law's "actual punitive effects." *Id.* at 36. (emphasis omitted). Appellee argues we should reject the Commonwealth's attempt to diminish the "importance and effect" of *Muniz* by conducting a new *Mendoza-Martinez* analysis, which will ultimately lead to "back-track[ing]" from *Muniz* "and return[ing] to the previous findings in [*Williams II*]." *Id.* at 38. Although appellee does not undertake a complete SVP-focused *Mendoza-Martinez* analysis, he does argue the RNC requirements are directly comparable to probation because SVPs can be immediately prosecuted for failing to register or attend counseling and the Commonwealth's arguments to the contrary conflict with *Muniz*. *Id.* at 41. According to appellee, because there is a monthly counseling requirement, the RNC requirements are "much more akin to probation than [the] mere information gathering process" at issue in *Muniz*. *Id.* at 42. Appellee also argues the RNC requirements are intended to deter SVPs from reoffending by forcing them into strict compliance with the statute. *Id.* at 43. As to the remaining *Mendoza-Martinez* factors, appellee contends we should rely on *Muniz* to find the RNC requirements constitute criminal punishment. *Id.* at 42-44.

With regard to the Commonwealth's alternative argument under *Ice* that *Apprendi* and *Alleyne* are inapplicable to SVP determinations, appellee first argues "the Commonwealth completely ignores this Honorable Court's previous recognition in 2003 that, '[b]ecause a determination of [SVP] status pursuant to Megan's Law II is submitted

to a judge and may be established by a lesser degree of proof . . . it cannot surmount *Apprendi* if such finding results in further criminal punishment." *Id.* at 44-45, *quoting Williams II*, 832 A.2d at 968-69. Appellee additionally argues *Ice* is a case about judicial sentencing authority and discretion regarding whether to run criminal sentences consecutively, and reliance on *Ice* "would be a misuse of federal precedent[.]" *Id.* at 45. Lastly, appellee contends an SVP designation implicates a number of inherent rights contained in the Pennsylvania Constitution, including the right to reputation, all of which "existed at the time of the signing of the Bill of Rights and continue to exist and apply with the same force today[,]" and *Ice* "does not change, limit, or modify this especially on state law grounds." *Id.* at 52. Accordingly, appellee argues the SVP designation process "must include, at a bare minimum, probable cause determinations and a jury empaneled [to make] determinations beyond a reasonable doubt." *Id.* at 53.

In a reply brief, the Commonwealth address five points. First, the Commonwealth notes it does not, as appellee claims, attempt to make the entirety of Subchapter H nonpunitive but instead argues the exact opposite: the RNC requirements are not punitive because "SVPs raise markedly different constitutional concerns than the non-SVP sex offenders discussed in [*Muniz*]." Commonwealth's Reply Brief at 1. Second, the Commonwealth rejects appellee's claim the *Williams II* Court predicted constitutional infirmities with the SVP process if the non-SVP requirements of a sex offender statute were deemed punitive, like in *Muniz*; the Commonwealth explains the *Williams II* Court was concerned only with the punitive nature of the RNC requirements under Megan's Law II, and the question of "whether treatment of SVPs under a given law constitutes punishment is subject to a body of precedent independent from that governing sex offenders generally[.]" *Id.* at 4. Third, the Commonwealth rejects appellee's claim that *Hendricks* is inapplicable because the statute at issue there contained due process

protections. *Id.* at 5. To that point, the Commonwealth claims appellee conflates the question of whether a sanction is punitive with whether the SVP designation process satisfies due process; the presence of procedural safeguards does not affect whether the underlying sanction is punitive and the Supreme Court of the United States has upheld involuntary commitment statutes using the clear and convincing standard. *Id.* at 6, *citing Addington v. Texas*, 441 U.S. 418 (1979). Fourth, the Commonwealth contends *Ice* and other *Apprendi*-related cases are binding precedent here even though a Pennsylvania statute is at issue because appellee has failed to raise a claim that the Pennsylvania Constitution "affords some greater jury trial right comparable to the federal right underlying *Apprendi*." *Id.* at 9. Finally, the Commonwealth claims appellee's due process and reputation claims are not before this Court since they do not relate to the question of whether Section 9799.24(e)(3) is governed by the *Apprendi* rule. *Id.* at 11.

## VI. Analysis

The threshold question for determining whether *Apprendi* and *Alleyne* are relevant to a constitutional analysis of Section 9799.24(e)(3) is whether the RNC requirements applicable to SVPs constitute criminal punishment. *See Commonwealth v. Lee*, 935 A.2d 865, 880 (Pa. 2007) (*Apprendi* claims cannot succeed where sanctions do not constitute punishment). Preliminarily, we agree with the Commonwealth's assertion that SVPs are different from the non-SVP SORNA registrants at issue in *Muniz* due to heightened public safety concerns based on the determination SVPs have "a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S. §9799.12. Therefore, a simple extrapolation from the analysis in *Muniz* is insufficient to determine whether the RNC requirements constitute criminal punishment. We must therefore conduct a separate examination of the RNC requirements using the two-part inquiry employed in both *Williams II* and *Muniz*:

We first consider whether the General Assembly's "intent was to impose punishment, and, if not, whether the statutory scheme is nonetheless so punitive either in purpose or effect as to negate the legislature's non-punitive intent." If we find the General Assembly intended to enact a civil scheme, we then must determine whether the law is punitive in effect by considering the *Mendoza-Martinez* factors. We recognize only the "clearest proof" may establish that a law is punitive in effect. Furthermore, in determining whether a statute is civil or punitive, we must examine the law's entire statutory scheme.

*Muniz*, 164 A.3d at 1208, *quoting Williams II*, 832 A.2d at 971.

## A. Intent of the General Assembly

The parties apparently agree that the General Assembly's stated intention is that Subchapter H of SORNA and the RNC requirements are nonpunitive in nature. *See* Commonwealth's Brief at 34 ("The Legislature was explicit in stating the statute 'shall not be construed as punitive,' 42 Pa.C.S. §9799.11(b)(2), and the intent to create a civil statute here is no less clear than with prior statutes."); Appellee's Brief at 36 ("The Commonwealth asserts that 'the General Assembly intended [Subchapter H] not to be punitive, but remedial and civil in nature.' **Of course it does,** . . . [t]he General Assembly has always held this non-punitive position[.]") (emphasis added), *quoting* Commonwealth's Brief at 34. Our review reveals this position is correct.

In analyzing the General Assembly's purpose in enacting Subchapter H, we recognize "[t]his is a question of statutory construction and we must consider the statute's text and its structure to determine the legislative objective. Furthermore, considerable deference must be afforded to the intent as the legislature has stated it." *Muniz*, 164 A.3d at 1209 (internal citations and quotations omitted). The expressed purpose, legislative findings, and declaration of policy of Subchapter H are nearly identical to those in the original SORNA statute. The General Assembly expressly maintains the statute "provides a mechanism for the Commonwealth to increase its regulation of sexual offenders in a manner which is nonpunitive but offers an increased measure of protection to the citizens

of this Commonwealth[,]" 42 Pa.C.S §9799.11(a)(2), and that "the exchange of relevant information about sexual offenders . . . [is] a means of assuring public protection and shall not be construed as punitive." 42 Pa.C.S. §9799.11(b)(2). The first listed purpose of the statute remains "[t]o bring the Commonwealth into substantial compliance with the [federal] Adam Walsh Child Protection and Safety Act of 2006." 42 Pa.C.S. §9799.10(1). One relevant modification to the existing declaration of policy is the General Assembly's stated intention that Subchapter H would "address the Pennsylvania Supreme Court's decision in [*Muniz*] and the Pennsylvania Superior Court's decision in [*Butler*]." 42 Pa.C.S. §9799.11(b)(4).

Notwithstanding the concerns expressed in *Muniz* regarding the General Assembly's stated intent, *see Muniz*, 164 A.3d at 1209 ("the act encompasses a much broader class of offenders than Megan's Law II, and includes relatively minor offenses within its net; the act is codified within the sentencing section of the Crimes Code; and the acts vests regulatory authority with the state police"), we nevertheless observe that "[n]othing in the expressed purpose, legislative findings, or declaration of policy of [Subchapter H] explicitly states the legislature intended the law to do anything other than create a remedial civil scheme to comply with federal legislation and protect the public." *Id*. As such, we find the purpose behind Subchapter H is "not to punish, but to promote public safety through a civil, regulatory scheme[,]" *Williams II*, 832 A.2d at 972, and to comply with federal law while also addressing the constitutional concerns raised by this Court in *Muniz*.

## B. *Mendoza-Martinez* Factors

We next consider the *Mendoza-Martinez* factors to determine whether the RNC requirements in Subchapter H of SORNA are sufficiently punitive in effect to overcome the General Assembly's stated nonpunitive purpose. *Williams II*, 832 A.2d at 971.

### i. Whether the Sanction Involves an Affirmative Disability or Restraint

Although in *Muniz* we distinguished *Williams II* by noting the counseling requirement SORNA placed upon SVPs is not an affirmative disability or restraint, we also held "the in-person reporting requirements, for both verification and changes to an offender's registration, to be a direct restraint upon [Muniz] and [held] this factor weigh[ed] in favor of finding SORNA's effect to be punitive." *Muniz*, 164 A.3d at 1211. We are constrained to make the same finding here with regard to the RNC requirements because SVPs are subject to the same exact reporting requirements as the Tier III offenders at issue in *Muniz*. *See id.* (discussing Tier III offender being required to report in person both quarterly and to report changes to registration information); 42 Pa.C.S. §9799.15(f)-(g) (requiring SVPs to report in person quarterly and to report changes to registration information). It is important to note, however, that merely placing affirmative disabilities or restraints on SVPs "does not inexorably lead to the conclusion that the government has imposed punishment . . . [as t]he State may take measures to restrict the freedom of the dangerously mentally ill[, which] is a legitimate nonpunitive governmental objective

and has been historically so regarded."[13]  *Hendricks*, 521 U.S at 363 (internal citation and quotation omitted).[14]

### ii. Whether the Sanction has been Historically Regarded as a Punishment

Our decision in *Muniz* also compels the conclusion that the RNC requirements are comparable to probation.  Our reasoning from *Muniz* is as follows:

> [T]he mandatory in-person verification requirement in Section 9799.15(e) not only creates an affirmative restraint upon [Muniz], requiring him to appear at a designated facility a minimum of 100 times over the next 25 years, extending for the remainder of his life, as a Tier III offender, but also greatly resembles the periodic meetings with probation officers imposed on probationers.  . . . Because SORNA differs significantly from the statute at issue in *Smith*, these disparities must be considered.

> In *Williams II*, the Pennsylvania Supreme Court found that probation has historically been considered a traditional form of punishment.  *Williams II*, 832 A.2d at 977.  Probation entails a set of mandatory conditions imposed on an individual who has either been released after serving a prison sentence, or has been sentenced to probation in lieu of prison time.  42

---

[13] In this regard, we agree with Justice Mundy "that our Court has drawn a distinction between treatment of [SVPs] and [non-SVPs], finding that the former may be subject to more onerous requirements by nature of their diagnoses with a dangerous mental abnormality."  Concurring Opinion, slip op. at 3.  Indeed, the distinction between SVPs and non-SVPs is the basis of our decision today.  However, this distinction matters little when considering whether the RNC requirements constitute an affirmative disability or restraint; our consideration of this factor is focused upon the effects of the statute rather than the individual's mental state or dangerousness.  *Smith*, 538 U.S. at 99-100 ("We next consider whether the Act subjects respondents to an affirmative disability or restraint.  Here, we inquire how the effects of the Act are felt by those subject to it.  If the disability or restraint is minor and indirect, its effects are unlikely to be punitive.") (internal citations and quotations omitted).  Further, we recognize the RNC requirements are nearly identical to the requirements considered in *Williams II*; nonetheless, the RNC requirements are actually identical to the Tier III requirements discussed in *Muniz*, which, as stated above, constrains our analysis of this factor.

[14] We agree with the Commonwealth that *Hendricks* is relevant to our analysis.  In determining the Kansas civil commitment statute did not constitute criminal punishment, the High Court focused, as we do here, on the sanction employed by the statute — involuntary commitment in that case — rather than the due process safeguards provided by the statute.  *See Hendricks*, 521 U.S. 364.

Pa.C.S. §9754. These conditions can include psychiatric treatment, limitations on travel, and notifying a probation officer when any change of employment or residency occurs. 42 Pa.C.S. §9754(c). Probationers are also subject to incarceration for a violation of any condition of their probation. 42 Pa.C.S. §9771.

Like the conditions imposed on probationers, registrants under SORNA must notify the state police of a change in residence or employment. 42 Pa.C.S. §9799.15(g). Offenders also face incarceration for any noncompliance with the registration requirements. 42 Pa.C.S. §9799.22(a). Furthermore, SORNA requires registrants who do not have a fixed place of work to provide "general travel routes and general areas where the individual works" in order to be in compliance. 42 Pa.C.S. §9799.16. The Supreme Court in *Smith* stated that "[a] sex offender who fails to comply with the reporting requirement may be subjected to criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense." *Smith*, 538 U.S. at 101–02. However, violations for noncompliance with both probation and SORNA registration requirements are procedurally parallel. Both require further factual findings to determine whether a violation has actually occurred. 42 Pa.C.S. §§9771(d), 9799.21. Similarly, but for the original underlying offense, neither would be subject to the mandatory conditions from which the potential violation stems.

*Muniz*, 164 A.3d at 1213 (internal brackets omitted), *quoting Commonwealth v. Perez*, 97 A.3d 747, 763-64 (Pa. Super. 2014) (Donohue, J., concurring). SVPs under Subchapter H are subject to the same in-person reporting requirements as the Tier III offenders at issue in *Muniz* and SVPs also face incarceration for failure to comply with the RNC requirements. *See* 18 Pa.C.S. §4915.1(c) (failure to comply with registration requirement graded as first or second-degree felony); *id.* at (c.3) (failure to comply with counseling requirement graded as first-degree misdemeanor). As such, we find the RNC requirements are akin to probation.[15]

---

[15] However, we do not consider the counseling requirement, in and of itself, as akin to probation or any other historical form of punishment. Although counseling can be a condition of probation, *see* 42 Pa.C.S. §9763(b)(4), we have held "counseling does not serve punitive ends notwithstanding its use as a condition of probation or parole" and

We also remain cognizant that the online registry, which is disseminated worldwide, "'exposes registrants[, SVPs included,] to ostracism and harassment'" and is comparable to public shaming. *Muniz*, 164 A.3d at 1212, *quoting Perez*, 97 A.3d at 765-66 (Donohue, J., concurring). We based our holding in *Muniz* on our view that "'the extended registration period and the worldwide dissemination of registrants' information authorized by SORNA now outweighs the public safety interest of the government so as to disallow a finding that it is merely regulatory.'" *Id*. However, we recognize there are heightened public safety concerns applicable to SVPs that were not at issue in *Muniz*. In addition, Subchapter H provides a mechanism for SVPs to procure their removal from the registry after 25 years. Based upon these important differences, we do not view the similarity of the online registry and notification requirements to traditional public shaming as heavier in the balance than the government's interest in promoting public safety with regard to SVPs, such that the statutory requirements constitute criminal punishment. We therefore conclude this factor does not weigh as heavily towards finding the provisions punitive as it did in *Muniz*.

### iii. Whether the Sanction Comes into Play Only on a Finding of Scienter

Our analysis of this factor in the present case is necessarily distinguishable from *Muniz*. In *Muniz*, we held the question of scienter made little difference because past criminal conduct is a necessary beginning point for all registration statutes such as SORNA. By comparison, although a criminal conviction is also the necessary beginning point for the SVP determination process, the imposition of the RNC requirements is not based upon criminal conduct at all. Instead, the "'determination is made based on a mental abnormality or personality disorder rather than one's criminal intent.'" *Williams II*,

---

"counseling, by its very nature, is rehabilitative and not retributive." *Williams II*, 832 A.2d at 977.

832 A.2d at 978, *quoting Hendricks*, 521 U.S. at 362 (internal quotations omitted). Accordingly, the RNC requirements are not triggered on the basis of a finding of scienter and this factor thus weighs in favor of finding the requirements are nonpunitive.

### iv. Whether the Operation of the Sanction Promotes the Traditional Aims of Punishment — Retribution and Deterrence

Although we recognize the RNC requirements are meant to prevent SVPs from committing additional sexual crimes, we agree with the Commonwealth that such recidivism is obviated through the counseling and public notification provisions of Subsection H rather than through deterrent threats; the distinction responds to the understanding that SVPs, who cannot control their behavior due to a mental abnormality or personality disorder, are unlikely to be deterred from re-offending even by threats of confinement. *Williams II*, 832 A.2d at 978, *citing Hendricks*, 521 U.S. at 362. Furthermore, unlike the reporting requirements at issue in *Muniz*, which applied to some less serious or non-sexual offenses, the RNC requirements are not connected to any offense at all, but are instead based upon a subsequent finding of a mental abnormality or personality disorder. As such, we conclude the RNC requirements do not promote deterrence. We reach the same conclusion with respect to retribution, which "affixes culpability for prior criminal conduct[.]" *Muniz*, 164 A.3d at 1215 (internal quotation and citation omitted). In *Muniz*, we based our finding of a retributive purpose in part on the fact that the "SORNA [requirements are] applicable only upon a conviction for a predicate offense." *Id.* Because the RNC requirements are not imposed on conviction, but rather after a determination of SVP status, we conclude they do not promote retribution. Accordingly, this factor weighs in favor of finding the RNC requirements to be nonpunitive.

### v. Whether the Behavior to which the Sanction Applies is Already a Crime

Our analysis of this factor also significantly differs from our analysis in *Muniz*, where we concluded it held little weight. Again, although a criminal conviction is a necessary starting point for the SVP determination process, the RNC requirements are "not applied to conduct at all, but to an individual's status as suffering from a serious psychological defect[,]" *Williams II*, 832 A.2d at 978, such that "the individual [is] likely to engage in predatory sexually violent offenses." 42 Pa.C.S. §9799.12. We conclude this factor weighs in favor of finding the RNC requirements to be nonpunitive.

### vi. Whether there is an Alternative Nonpunitive Purpose to which the Sanction may be Rationally Connected

This Court has previously stated "[t]he Act's rational connection to a nonpunitive purpose is a most significant factor in our determination that the statute's effects are not punitive." *Williams II*, 832 A.2d at 979 (internal citation and quotation omitted). In *Muniz*, we recognized there are conflicting studies regarding the recidivism rate among sexual offenders and whether sex offender registration laws are effective in preventing recidivism. *Muniz*, 164 A.3d at 1217. Due to this conflict, we ultimately deferred to the General Assembly's findings that "'[s]exual offenders pose a high risk of committing additional sexual offenses and protection of the public from this type of offender is a paramount governmental interest." *Id.*, *quoting* 42 Pa.C.S. §9799.11(a)(4). In any event, the apparent conflict in these studies is not relevant here because there is no dispute regarding the heightened public safety concerns applicable to SVPs — individuals who underwent individual assessments that led to a finding they are highly likely to reoffend due to a mental abnormality or personality disorder. Under these circumstances specific to SVPs, "reason dictates" the government should have information about the location of SVPs and the ability to share that information with the community for its protection, while also providing counseling to SVPs as a preventive measure against recidivism. *Williams II*, 832 A.2d at 979. Accordingly, we conclude there is a rational connection between the

RNC requirements and the government's interest in protecting the public from SVPs, and this factor weighs in favor of finding the requirements are nonpunitive.

### vii. Whether the Sanction Appears Excessive in Relation to the Alternative Purpose Assigned

Our analysis of this factor also departs from *Muniz*, where we expressed concerns that SORNA was "over-inclusive" in its "categoriz[ation of] a broad range of individuals as sex offenders subject to its provisions, including those convicted of offenses that do not specifically relate to a sexual act." *Muniz*, 164 A.3d at 1218. Over-inclusiveness is not at issue here because the RNC requirements apply only to SVPs who have been individually determined to suffer from a mental abnormality or personality disorder such that they are highly likely to continue to commit sexually violent offenses. With this difference in mind, we find that the RNC requirements "appear reasonably designed to serve the government's legitimate goal of enhancing public awareness and ensuring that offenders do not relapse into harmful behavior. Counseling serves the rehabilitative and prophylactic purposes subsumed by that goal, and the registration/notification measures appear calculated to advance appropriate public awareness." *Williams II*, 832 A.2d at 981. This is especially so with regard to SVPs and the attendant heightened public safety concerns; "the state's interest in protecting the public against [SVPs] is so great that it justifies the adverse effects" the RNC requirements may have upon the individual. *Id.* at 982. Furthermore, the statutory scheme of Subchapter H is even less problematic than the scheme we deemed not excessive in *Williams II* because SVPs may now petition for removal from the registry after 25 years. *Compare* 42 Pa.C.S. §9799.15(a.2) *with Williams II*, 832 A.2d at 982-83 ("Still, one of the most troubling aspects of the statute is that the period of registration, notification, and counseling lasts for the [SVP's] entire lifetime. A reasonable argument could be made that, to avoid excessiveness, the Legislature was required to provide some means for a[n SVP] to invoke judicial review in

an effort to demonstrate that he no longer poses a substantial risk to the community."). We therefore conclude this factor weighs in favor of finding the RNC requirements nonpunitive.

### viii. Balancing of Factors

Although we recognize the RNC requirements impose affirmative disabilities or restraints upon SVPs, and those requirements have been historically regarded as punishment, our conclusions in this regard are not dispositive on the larger question of whether the statutory requirements constitute criminal punishment. This is especially so where the government in this case is concerned with protecting the public, through counseling and public notification rather than deterrent threats, not from those who have been convicted of certain enumerated crimes, but instead from those who have been found to be dangerously mentally ill. *Hendricks*, 521 U.S at 362-63. Under the circumstances, and also because we do not find the RNC requirements to be excessive in light of the heightened public safety concerns attendant to SVPs, we conclude the RNC requirements do not constitute criminal punishment.

### VII. Conclusion

As we have found the RNC requirements applicable to SVPs do not constitute criminal punishment, appellee's claim the principles set forth in *Apprendi* or *Alleyne* have been violated by enforcement of the requirements of Section 9799.24(e)(3) necessarily fails. *See Lee*, 935 A.2d at 880 (*Apprendi* claims cannot succeed where sanctions do not constitute punishment).[16] Accordingly, we reverse the order of the Superior Court

---

[16] We need not reach the Commonwealth's claim under *Ice* that *Apprendi* and *Alleyne* do not apply to the Section 9799.24(e)(3) determination because it does not involve facts traditionally decided by juries under the common law at the time of the passage of the Bill of Rights.

vacating the trial court's SVP order and remand for consideration of appellee's claims that were raised and not addressed below.

Chief Justice Saylor and Justices Baer, Todd, Donohue and Wecht join this opinion.

Justice Mundy files a concurring opinion.